**Johnathan E. Mansfield, OSB #055390**
Email jmansfield@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503-222-9981
Fax 503-796-2900

**Edward W. Goldstein** (*pro hac vice pending*)
Email egoldstein@gfpiplaw.com
**Corby R. Vowell** (*pro hac vice pending*)
Email cvowell@gfpiplaw.com
Goldstein, Faucett & Prebeg, L.L.P.
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone 713-877-1515
Fax 713-877-1145

Attorneys for Plaintiff Gary Odom

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GARY ODOM,** an Oregon resident,<br><br>     Plaintiff,<br><br>   v.<br><br>**ATTACHMATE CORPORATION,** a Washington corporation,<br>**AUSTHINK USA, INC.,** a Delaware corporation,<br>**BAE SYSTEMS, INC.,** a Delaware corporation,<br>**BBS TECHNOLOGIES, INC.,** a Texas corporation,<br>**COMPONENTONE, LLC,** a Pennsylvania corporation, | Civil Action No. _____<br><br>PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Page 1      PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

**DIONEX CORPORATION,** a Delaware corporation,
**DUOSERVE, INC.,** a California corporation,
**EMPORTAL, INC.,** a California corporation,
**ESQUIRE INNOVATIONS, INC.,** a Nevada corporation,
**FINDEX.COM, INC.,** a Nevada corporation,
**FRONTLINE SYSTEMS, INC.,** a Nevada corporation,
**GE FANUC INTELLIGENT PLATFORMS, INC.,** a Delaware corporation,
**LIVINGSTON TECHNOLOGIES, INC.,** a Utah corporation,
**MATCHWARE, INC.,** a Florida corporation,
**METAPRODUCTS CORPORATION,** a Florida corporation,
**MICROSYSTEMS COMPANY, LLC,** an Illinois corporation,
**MINDJET CORPORATION,** a Delaware corporation,
**MVP SYSTEMS SOFTWARE, INC.,** a Connecticut corporation,
**OMNIVEX CORPORATION,** an Ontario corporation,
**PROMT AMERICAS,** a California corporation,
**SIEMENS PRODUCT LIFECYCLE MANAGEMENT SOFTWARE, INC.,** a Delaware corporation,
**SIMTECH SOFTWARE, INC.,** a Texas corporation,
**SMARTDRAW.COM,** a California corporation,
**TECHSMITH CORPORATION,** a Michigan corporation,
**TLM, INC.,** a Washington corporation,
**TRADERS DEVELOPMENT, LLC,** a California corporation,
**UNIFY CORPORATION,** a Delaware corporation,

       Defendants.

Page 2    PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

## I.    NATURE OF THE ACTION

Plaintiff Gary Odom ("Odom") brings this action against Attachmate Corporation ("Attachmate"), Austhink  USA, Inc. ("Austhink"), BAE Systems, Inc. ("BAE"), BBS Technologies, Inc.  ("BBS"), ComponentOne, LLC ("ComponentOne"), Dionex Corporation ("Dionex"), Duoserve, Inc. ("Duoserve"), Emportal, Inc. ("Emportal"), Esquire Innovations, Inc. ("Esquire"), FindEx.com, Inc. ("FindEx.com"), Frontline Systems, Inc. ("Frontline"), GE Fanuc Intelligent Platforms, Inc. ("GE Fanuc"), Livingston Technologies, Inc. ("Livingston"), Matchware, Inc. ("Matchware"), MetaProducts Corporation ("MetaProducts"), Microsystems Company, LLC ("Microsystems"), Mindjet Corporation ("Mindjet"), MVP Systems Software, Inc. ("MVP"), Omnivex Corporation ("Omnivex"), PROMT Americas ("PROMT"), Siemens Product Lifecycle Management Software Inc. ("Siemens PLM"), SimTech Software Inc. ("SimTech"), SmartDraw.com ("SmartDraw"), TechSmith Corporation ("TechSmith"), TLM, Inc. ("TLM"), Traders Development, LLC ("Traders"), and Unify Corporation ("Unify") (collectively "Defendants"), for patent infringement under the laws of the United States, Title 35, United States Code.

## II.    JURISDICTION AND VENUE

1.    This is an action under the laws of the United States, 35 U.S.C. § 101 et seq.  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1337 and 1338(a).

2.    Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendants have done business in this District, have committed acts of infringement in this District, and continue to commit acts of infringement in this District, entitling Odom to relief.

## III.    PARTIES

3.    Odom alleges all facts herein on information and belief, except those facts concerning the activities of Odom.

4.    Odom is an individual, residing at 1223 NW 12th Avenue, #1545, Portland,

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

Oregon 97209.

5.    Odom is the sole inventor and owner of the patent at issue in this action, U.S. Patent No. 7,363,592 B1.

6.    Attachmate is a Washington Corporation with its principal place of business at 1500 Dexter Avenue N, Seattle, WA 98109-3032.  Attachmate may be served through its registered agent, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301-3581.

7.    Austhink is a Delaware Corporation with its principal place of business at 5576 Glenbrook Drive, Oakland, CA 94618-1720.  Austhink may be served through its registered agent, Matteo G. Daste, 199 Fremont Street, Floor 21, San Francisco, CA 94105-6640.

8.    BAE is a Delaware Corporation with its principal place of business at 1601 Research Boulevard Rockville, MD 20850-3126.  BAE may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

9.    BBS is a Texas Corporation with its principal place of business at 802 Lovett Boulevard, Houston, TX 77006-3906.  BBS may be served through its registered agent, CT Corporation System, 350 N Saint Paul Street, Dallas, TX 75201-4240.

10.    ComponentOne is a Pennsylvania Corporation with its principal place of business at 4516 Henry Street, Suite 500, Pittsburgh, PA 15213-3730.  ComponentOne may be served through its registered agent, Gustavo Eydelsteyn, 98 Walnut Avenue, Atherton, CA 94027.

11.    Dionex is a Delaware Corporation with its principal place of business at 1228 Titan Way, Sunnyvale, CA 94085-4015.  Dionex may be served through its registered agent, Corporation Service Company, 10 E South Temple, Salt Lake City, UT 84133-1101.

12.    Duoserve is a California Corporation with its principal place of business at 281 Kilworth Drive, Corona, CA 92882-6302.  Duoserve may be served through its registered agent, Samer Abdullah, 281 Kilworth Drive, Corona, CA 92882-6302.

13.    Emportal is a California Corporation with its principal place of business at

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

1646 N California Boulevard, Suite 200, Walnut Creek, CA 94596-4158. Emportal may be served through its registered agent, Kevin Grauman, 1646 N California Boulevard, Suite 200, Walnut Creek, CA 94596-4158.

14.   Esquire is a Nevada Corporation with its principal place of business at 27574 Commerce Center Drive, Suite 130, Temecula, CA 92590-2535. Esquire may be served through its registered agent, CSC Services of Nevada, Inc., 502 E John Street, Carson City, NV 89706.

15.   FindEx.com is a Nevada Corporation with its principal place of business at 620 N 129th Street, Omaha, NE 68154-6107. FindEx.com may be served through its registered agent, The Corporation Trust Company of Nevada, 500 Reno, Reno, NV 89511.

16.   Frontline is a Nevada Corporation with its principal place of business at PO BOX 4288, Incline Village, NV 89450-4288. Frontline may be served through its registered agent, David A. Garcia, Kietzke Lane, 2nd Floor, Reno, NV 89511.

17.   GE Fanuc is a Delaware Corporation with its principal place of business at 29 N & Route 606, Charlottesville, VA 22911. GE Fanuc may be served through its registered agent, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301-3581.

18.   Livingston is a Utah Corporation with its principal place of business at 3392 Harvest CV, Lehi, UT 84043-9560. Livingston may be served through its registered agent, Bryan Keith Livingston, 3392 Harvest CV, Lehi, UT 84043-9560.

19.   Matchware is a Florida Corporation with its principal place of business at 311 S Brevard Avenue, Tampa, FL 33606-2213. Matchware may be served through its registered agent, Ulrik Merrild, 311 S Brevard Avenue, Tampa, FL 33606-2213.

20.   MetaProducts is a Florida Corporation with its principal place of business at 702 Berrocales De Avila, Tampa, FL 33613-1098. MetaProducts may be served through its registered agent, Robert Atwell Jr., 702 Berrocales De Avila, Tampa, FL 33613-1098.

21.   Microsystems is an Illinois Corporation with its principal place of business at

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

3025 Highland Park Way, Suite 450, Downers Grove, IL 60515.  Microsystems may be served through its registered agent, John Rigas, 3025 Highland Park Way, Suite 450, Downers Grove, IL 60515.

22.    Mindjet is a Delaware Corporation with its principal place of business at 1160 Battery Street, Floor 4, San Francisco, CA 94111-1216.  Mindjet may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

23.    MVP is a Connecticut Corporation with its principal place of business at 11 Wollmann Farms Road, Burlington, CT 06013-1625.  MVP may be served through its registered agent, Scott B McCausland, 11 Wollmann Farms Road, Burlington, CT 06013-1625.

24.    Omnivex is an Ontario Corporation with its principal place of business at 3300 Highway 7, Suite 501, Concord, Ontario L4K 4M3 Canada.  Omnivex may be served through its registered agent, Illinois Corporation Service Company, 801 Stevenson Drive, Springfield, IL 62703-4261.

25.    PROMT is a California Corporation with its principal place of business at 330 Townsend Street, Suite 204, San Francisco, CA 94107-1662.  PROMT may be served through its registered agent, National Registered Agents, Inc., 2875 Michelle, Suite 100, Irvine, CA 92606-1024.

26.    Siemens PLM is a Delaware Corporation with its principal place of business at 5800 Granite Parkway, Suite 600, Plano, TX 75024-6612.  Siemens PLM may be served through its registered agent, C T Corporation System, 350 N Saint Paul Street, Dallas, TX 75201-4240.

27.    SimTech is a Texas Corporation with its principal place of business at 1565 W Main  Street, Suite 208-310,  Lewisville, TX 75067-3394.    SimTech may be served through   its   registered   agent,   Patrick   Koh,   1565 W Main   Street, Suite 208-310, Lewisville, TX 75067-3394.

28.    SmartDraw is a California Corporation with its principal place of business at

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

9909 Mira Mesa Boulevard, Suite 300, San Diego, CA 92131-1064.  SmartDraw may be served through its registered agent, Andrew Resnick, 10845 Gabacho Drive, San Diego, CA 92124-1408.

29.     TechSmith is a Michigan Corporation with its principal place of business at 2405 Woodlake Drive, Okemos, MI 48864-5910.  TechSmith may be served through its registered agent, William Hamilton, 2405 Woodlake Drive, Okemos, MI 48864-5910.

30.     TLM is a Washington Corporation with its principal place of business at 3670 Woodland Park Avenue N, Seattle, WA 98103.  TLM may be served through its registered agent, Robert McNeel, 3670 Woodland Park Avenue N, Seattle, WA 98103.

31.     Traders is a California Corporation with its principal place of business at 17337 Ventura Boulevard, Suite 228, Encino, CA 91316-4048.  Traders may be served through its registered agent, Mark Rabinovich, 17337 Ventura Boulevard, Suite 228, Encino, CA 91316-4048.

32.     Unify is a Delaware Corporation with its principal place of business at 1420 Rocky Ridge Drive, Suite 380, Roseville, CA 95661.  Unify may be served through its registered agent, Steven D Bonham, 1420 Rocky Ridge Drive, Suite 380, Roseville, CA 95661.

## IV.     CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 7,363,592 B1

33.     On April 22, 2008, United States Patent No. 7,363,592 B1 ("the '592 patent") was duly and legally issued for an invention entitled "Tool Group Manipulations."  Odom is the sole inventor and owner of the '592 patent, and holds all rights and interest in the '592 patent. A true and correct copy of the '592 patent is attached hereto as Exhibit A.

34.     Attachmate has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Reflection which includes the Ribbon user interface.  Attachmate is liable for

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

35.    Austhink has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including bCisive which includes the Ribbon user interface. Austhink is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

36.    BAE has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including SOCET GXP v3.0 which includes the Ribbon user interface. BAE is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

37.    BBS has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including PowerShare Plus which includes the Ribbon user interface. BBS is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

38.    ComponentOne has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Doc-To-Help 2009 which includes the Ribbon user interface. ComponentOne is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

39.    Dionex has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Chromeleon7 which includes the Ribbon user interface. Dionex is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

40.     Duoserve has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including ScheduFlow 2008 which includes the Ribbon user interface.  Duoserve is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

41.     Emportal has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Emportal HCM which includes the Ribbon user interface.  Emportal is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

42.     Esquire has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including iCreate and iHyperstyles which include the Ribbon user interface.  Esquire is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

43.     FindEx.com has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including QuickVerse which includes the Ribbon user interface.  FindEx.com is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

44.     Frontline has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Risk Solver which includes the Ribbon user interface.  Frontline is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

45.     GE Fanuc has infringed and continues to infringe at least claims 8, 10 and 14 of

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Proficy iFix5 which includes the Ribbon user interface. GE Fanuc is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

46.     Livingston has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Vector Studio which includes the Ribbon user interface. Livingston is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

47.     Matchware has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Mediator 9 and MindView3 which include the Ribbon user interface. Matchware is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

48.     MetaProducts has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Offline Explorer Pro 5.4 which includes the Ribbon user interface. MetaProducts is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

49.     Microsystems has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including D3 and DocXTools which include the Ribbon user interface. Microsystems is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

50.     Mindjet has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

by manufacturing, marketing, selling, distributing, importing, and/or using products, including MindManager 8 which includes the Ribbon user interface. Mindjet is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

51.    MVP has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including JAMS 4.6 which includes the Ribbon user interface. MVP is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

52.    Omnivex has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Moxie which includes the Ribbon user interface. Omnivex is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

53.    PROMT has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including @promt Personal 8.0 Translator, @promt Office 8.0 Translator, @promt Professional 8.0 Translator, @promt Expert 8.0 Translator, @promt NET Professional 8.0, and @promt NET Expert 8.0 which include the Ribbon user interface. PROMT is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

54.    Siemens PLM has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Solid Edge which includes the Ribbon user interface. Siemens PLM is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

55.    SimTech has infringed and continues to infringe at least claims 8, 10 and 14 of the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

'592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including MindMapper 2009 which includes the Ribbon user interface.    SimTech is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

56.    SmartDraw has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including SmartDraw which includes the Ribbon user interface.    SmartDraw is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

57.    TechSmith has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Snagit which includes the Ribbon user interface.    TechSmith is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

58.    TLM has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Grasshopper which includes the Ribbon user interface.    TLM is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

59.    Traders has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily, by manufacturing, marketing, selling, distributing, importing, and/or using products, including Avalon FX Pro Trading Terminal 4.1 which includes the Ribbon user interface.    Traders is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

60.    Unify has infringed and continues to infringe at least claims 8, 10 and 14 of the '592 patent in this judicial district and elsewhere, directly, by inducement and/or contributorily,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

by manufacturing, marketing, selling, distributing, importing, and/or using products, including Report Builder 5.1 which includes the Ribbon user interface.  Unify is liable for its infringement of the '592 patent pursuant to 35 U.S.C. § 271.

61.    Defendants' acts of infringement have caused damage to Odom, and Odom is entitled to recover from Defendants the damages sustained by Odom as a result of Defendants' wrongful acts in an amount subject to proof at trial, which in no event can be less than a reasonable royalty.

## V.    JURY DEMAND

62.    Odom hereby demands a trial by jury on all claims and issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Odom, requests entry of judgment in its favor and against Defendants as follows:

a)    Declaring that Defendants have infringed claims 8, 10 and 14 of U.S. Patent No. 7,363,592 B1;

b)    Awarding Odom damages arising from Defendants' infringement of U.S. Patent No. 7,363,592 B1, which can be no less than a reasonable royalty;

c)    Awarding Odom prejudgment and post-judgment interest;

d)    Declaring this an exceptional case and awarding attorneys' fees and costs pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

e)    Awarding such other costs and further relief as the Court may deem just and proper under the circumstances.

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

Dated:   April 17, 2009               Respectfully submitted,

**SCHWABE, WILLIAMSON & WYATT, P.C.**

Johnathan E. Mansfield, OSB #05539
Pacwest Center
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

**GOLDSTEIN, FAUCETT & PREBEG, L.L.P.**

Edward W. Goldstein (*pro hac vice pending*)
Corby R. Vowell (*pro hac vice pending*)
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone 713-877-1515
Fax 713-877-1145

Attorneys for Plaintiff Gary Odom

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981



US007363592B1

(12) **United States Patent**
    Odom

(10) **Patent No.:** **US 7,363,592 B1**
(45) **Date of Patent:** **Apr. 22, 2008**

(54) **TOOL GROUP MANIPULATIONS**

(76) Inventor: **Gary Odom**, 15505 SW. Bulrush La.,
Tigard, OR (US) 97223

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 239 days.

(21) Appl. No.: **11/125,276**

(22) Filed: **May 9, 2005**

**Related U.S. Application Data**

(63) Continuation of application No. 09/707,194, filed on
Nov. 6, 2000, now Pat. No. 7,036,087.

(51) **Int. Cl.**
    *G06F 13/00*        (2006.01)
    *G06F 15/00*        (2006.01)

(52) **U.S. Cl.** ...................................... **715/779**; 715/786

(58) **Field of Classification Search** ........ 715/733–744,
715/762, 779, 810, 838, 840, 731, 711, 786
See application file for complete search history.

(56)                **References Cited**

U.S. PATENT DOCUMENTS

5,644,737 A  *   7/1997  Tuniman et al. ............ 715/810

* cited by examiner

*Primary Examiner*—Cao (Kevin) Nguyen

(57)                **ABSTRACT**

Herein discloses interactive user manipulations of tool
groups within toolbars User-responsive tool group manipu-
lation facilitates greater utility, user control, and customiza-
tion potential, for toolbars.

**19 Claims, 5 Drawing Sheets**

1W WRAPPED TOOLBARS                          9S WRAP START INDICATOR



9E WRAP END INDICATOR



**FIGURE 1**



FIGURE 2

FIGURE 3

Exhibit A
Page 3 of 10





**FIGURE 7**



**FIGURE 8**

**U.S. Patent**        Apr. 22, 2008        Sheet 5 of 5            US 7,363,592 B1

| FEATURE | MOUSE ACTION | KEY |
|---|---|---|
| JOIN TOOLBARS | DRAG TOOLBAR HANDLE ONTO END OF JOINING TOOLBAR | CTL |
| SEPARATE GROUPS | DRAG GROUP DIVIDER VERTICALLY | CTL |
| MOVE GROUP | DRAG GROUP | CTL & ALT |
| MANUALLY COMPRESS/EXPAND GROUP | DRAG GROUP DIVIDER HORIZONTALLY | |
| ONE-CLICK COMPRESS/EXPAND GROUP | CLICK GROUP DIVIDER (TOOLBAR HANDLE IF FIRST GROUP) | ALT |
| TOGGLE TOOLBAR WRAP | CLICK WRAP TOGGLE BUTTON | |
| MOVE, REMOVE TOOL | DRAG TOOL | ALT |
| COPY TOOL | DRAG TOOL | ESC |

**FIGURE 9**

US 7,363,592 B1

**1**

## TOOL GROUP MANIPULATIONS

### CROSS-REFERENCE TO RELATED APPLICATIONS

Compliant with 35 U.S.C. § 120, this application is a continuation of U.S. patent application Ser. No. 09/707,194, now U.S. Pat. No. 7,036,087, thereby claiming the priority date of Nov. 6, 2000.

### STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not Applicable

### THE NAMES OF THE PARTIES TO A JOINT RESEARCH AGREEMENT

Not Applicable

### INCORPORATION-BY-REFERENCE OF MATERIAL SUBMITTED ON A COMPACT DISC

Not Applicable

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The field of invention is computer graphical user interface.

2. Description of the Related Art Including Information Disclosed Under 37 CFR 1.97 and 1.98

Toolbars have become a standard feature of computer software applications. Even menus have become ensconced in toolbars. The reason is that toolbars offer immediate, single-click access to commonly used features. The tools themselves, often iconically symbolic, become instantly recognizable, and thus, affording rapid recognition, accommodate efficient action.

A recent advance has been to visually distinguish groups of tools, as a further means for more efficient recognition of tools by similar functionality. What has been lacking are the means for allowing easy user manipulation of tool groups as an integral entity.

### BRIEF SUMMARY OF THE INVENTION

As described herein, a tool group becomes a user-manipulable entity unto itself. This accommodates easy reorganization of a toolbar, either by the user, or automatically, to further productivity. Other manipulations, such as allowing a user to wrap a toolbar comprising multiple groups, or merge two toolbars, or selectively hide tools on a group-by-group basis, provide further conveniences to users in having toolbars behave as desired. Another aspect is automatic configuration of tools and groups of tools in a toolbar based upon tool usage frequency.

### BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

FIG. 1 is a block diagram of a computer suitable for practicing the invention.

FIG. 2 depicts toolbars in the prior art.

FIG. 3 depicts compressed toolbars in the prior art.

**2**

FIGS. 4-5 depict aspects of toolbars and toolbar manipulations.

FIG. 6 depicts a wrapped toolbar.

FIG. 7 depicts a selected tool in a toolbar.

FIG. 8 depicts rearranged tools in a toolbar.

FIG. 9 summarizes manual toolbar manipulations.

### DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 is a block diagram of a computer 100 which comprises at least a display device 101; CPU 102; storage 103, which comprises memory 104 and optionally one or more devices with retention medium(s) 105 such as hard disks, diskettes, compact disks, or tape; and one or more input devices 106, such a keyboard 108 and/or one or more pointing devices 107, such as a mouse. The mouse 107 is the most popular pointing device 107 for desktop computers 100. In the description below, the mention of mouse 107 is meant to include pointing devices 107 of any type. Such a computer 100 is suitable for use with this invention.

FIGS. 2 and 3 depicts toolbars in the prior art. Two toolbars 1 are depicted: a function toolbar 1*f* in front of a menu toolbar 1*m*, horizontally arranged end-to-end. A toolbar 1 comprises a set of tool buttons 2, typically represented as icons symbolic of functional features. A menu toolbar 1*m* comprises menus 12, as depicted. A toolbar 1 has a handle 3 by which the toolbar 1 may be moved.

Tools 2 are typically functionally segregated by group dividers 5. The set of tools 2 between group dividers 5, or between one end of a toolbar 1 and a group divider 5 is referred to as a group 6 of tools 2. For example, tools 2 derived from the 'File' menu 12 may be segregated by a group divider 5 from tools derived from the 'Edit' menu 12. In the prior art, users may customize tools 2 while in a customization mode, grouping and partitioning tools 2 without regard to their functional derivation. Also in the prior art, tools 2 may be added or removed via a menu 12 modelessly.

Toolbars 1 are depicted horizontally, but may have a vertical orientation as well. In the preferred embodiment, for horizontal orientation, the head 20 of a toolbar 1 is at the left, the end (tail) 21 at the right. For a horizontal toolbar 1, the length of a toolbar 1 or toolbar group 6 is the measurable distance from the head 20 of the toolbar 1 or group 6 to its tail 21. In the preferred embodiment, for vertical orientation, the head 20 of the toolbar 1 is at the top, the end (tail) 21 at the bottom. Tools 2 (with respect to a group 6) and groups 6 (with respect to a toolbar 1) also have a head 20 (horizontal: left or vertical: top) and tail 21 (horizontal: right or vertical: bottom) orientation corresponding to the toolbar 1.

Directly means by direct manual manipulation with the intended target, as opposed to indirectly, which would be a result caused by indirect action, such as indirectly changing the length of a toolbar 1 or toolbar group 6 by selecting a change in toolbar 1 icon size via selection of a menu or dialog item. Manual means via user interaction (as opposed to automatic, such a change based upon usage frequency).

Other than adding or removing tools 2, tool 2 customization in the prior art occurs only within a customization mode. A mode is an exclusive mode of operation. In modal operation, a user is limited to operations specific to the particular mode. In tool 2 customization mode, for example, a user can only customize the toolbar 1; nominal application operations are inaccessible until the user quits the mode. In modeless operation, a user can act upon the nominal set of available operations. In graphic user interfaces, dialogs are commonly used to visibly indicate modality (though mod-

US 7,363,592 B1

**3**

eless dialogs also exist). Typically when a modal dialog is visible in the prior art, clicking the cursor outside the designated area of modality typically produces a warning sound, but does nothing else. In modes, operations specific to the mode (modal operations) must be completed before nominal application operations may proceed.

FIG. 3 depicts compressed toolbars 1. A toolbar 1 in the prior art is compressed if the window in which the toolbar 1 resides is narrowed to less than the length of one or more toolbars 1 arranged horizontally end-to-end. Compressed toolbars 1 may have a compressed toolbar indicator 13 that acts as an access mechanism for an extension menu 16 for access to tools 2 (or menus 12 for menu toolbars 1m) that are no longer immediately visible.

FIGS. 4 through 8 depict, and FIG. 9 summarizes, described toolbar 1 innovations and preferred embodiment methods, all of which are modeless. Other methods may be employed to equivalent result in alternate embodiments, including via menu item, function button, different selection or drag technique with or without specific keys pressed singularly or in combination, different key presses singularly or in combination, or other equivalent means.

FIG. 4 depicts two toolbars 1 arranged horizontally end-to-end. Depicted in FIG. 5, toolbars 1 may be merged (joined) 11: a tail-end 21 toolbar 1 (in the depicted example, the menu toolbar 1m) may be joined 11 to a head-end 20 toolbar 1 (in the depicted example, the function toolbar 1f). The preferred embodiment to merge 11 toolbars 1 is by selecting the tail-end 21 toolbar handle 3 (toolbar 1m in the Figure) while pressing the 'Ctl' key, then dragging the mouse 107 pointer onto the back end of the head-end toolbar (1f in the Figure), then releasing the mouse 107 button; not much movement, distance-wise. Upon completion of a merge operation in the preferred embodiment, the toolbar handle 3 becomes a group divider 5.

To separate a group 6 and horizontally succeeding groups 6 (i.e., the rest of the toolbar 1) in the preferred embodiment, select the group 6 while pressing the 'Ctl' key, then drag the group divider 5 vertically; in other words, pull part of the toolbar 1 vertically off from the desired head 20 group 5.

As depicted in FIGS. 4 and 5, groups 6 may be directly compressed and expanded in the preferred embodiment by sliding the tail 21 group divider 5 horizontally. As depicted, the delete tool 2d and undo tool 2u shown in FIG. 4 have been hidden in FIG. 5. A compressed group indicator 7 signals a compressed group 6 in the preferred embodiment. In the preferred embodiment, a collapsed group 6 may be expanded by one tool 2 by clicking the tail group divider 5 or compressed group indicator 7. In one embodiment, a group 6 may be collapsed by one tool 2 by clicking the tail group divider 5 or compressed group indicator 7 while pressing the 'Esc' key. In the preferred embodiment, a collapsed group 6 may be fully expanded by clicking the tail group divider 5 or compressed group indicator 7 while pressing the 'Alt' key. Likewise, clicking a tail-end 21 group divider 5 while holding the 'Alt' key in the preferred embodiment compresses a group 6 if the group 6 is fully expanded. In the preferred embodiment, 1f the group 6 had never been compressed by a user, the group 6 is compressed to display a single tool 2. If the group 6 has been compressed before, in the preferred embodiment the group 6 is compressed to the previously compressed number of tools 2. In other words, clicking a tail-end 21 group divider 5 while pressing the 'Alt' key in the preferred embodiment acts as a compression/expansion toggle.

**4**

A strip of one or more toolbars 1 may wrap-around when their enclosing window is narrowed such that the entire toolbar 1 strip is not visible. In the preferred embodiment, a wrap toggle button 8 at the end 21 of a toolbar 1 strip is clicked to enable 8w or disable 8u toolbar wrapping. FIG. 4 depicts the wrap toggle 8 off. FIG. 5 depicts the wrap toggle 8 on. FIG. 6 depicts a wrapped toolbar 1w. As depicted, in the preferred embodiment there are wrap indicators 9 to indicate wrapped toolbar 1w state.

In the preferred embodiment, a tool 2 may be modelessly moved within a group 6 or toolbar 1, moved to another toolbar 1, or removed from a toolbar 1 by pressing the 'Alt' key, then selecting and dragging a tool 2: to move a tool 2, drag the tool 2 to its target location over a toolbar 1 and release the mouse 107 button; to remove a tool 2, drag the tool 2 outside of any toolbar 1 and release the mouse 107 button. In the preferred embodiment, a tool 2 may be modelessly copied within a group 6 or toolbar 1, copied to another toolbar 1, or copied to create a new toolbar 1, by pressing the 'Esc' key, then selecting and dragging a tool 2: to copy a tool 2, drag the tool 2 to its target location over a toolbar 1 and release the mouse 107 button; to create a new toolbar 1 from a tool 2, while retaining the tool 2 in its present position, drag the tool 2 outside of any toolbar 1 and release the mouse 107 button. FIG. 7 depicts an example of visual feedback to a user of a selected tool 2hs. FIG. 8 depicts the resultant rearrangement from a tool 2 move by dropping the history tool 2h onto the toolbar 1 in front of the search tool 2s.

The technique of select, 'drag & drop', as it is commonly called, is known in the prior art, but has never been known to be applied to modeless configuration of toolbar 1 components. As in the prior art, ambiguous placement by sloppy dropping, such as dropping right on top rather than decidedly in front or behind, can be resolved to one pixel resolution fore or rear, and, if dropped dead center on top of a tool 2, a simple default rule to drop behind (the preferred embodiment) or in front of the existing tool 2 applied.

Similar to tool 2 rearrangement, in the preferred embodiment, a group 6 may be modelessly rearranged within a toolbar 1, moved to another toolbar 1, or taken off a toolbar 1 to become a separate toolbar 1 unto itself, by selecting the group 6 while pressing the 'Ctl' and 'Alt' keys, then dragging a group 6 to its target location and releasing the mouse 107 button. Note that in the preferred embodiment, a group 6 itself is selected, not group divider 5 nor toolbar handle 3; also note the unique key press combination in the preferred embodiment. If creating a new toolbar 1 from one or more tools 2 or groups 6, a user may be prompted to enter a new toolbar 1 name.

Optionally, tools 2 within a group 6 or integral (whole) groups 6 within a toolbar 1 may be automatically rearranged based upon usage frequency. A frequency (tool 2 usage) counter tracks each tool's 2 selection. Within a group 6, a frequently used tool 2 may be promoted toward the head 20 of a group 6 after a relative usage frequency threshold is achieved. The preferred embodiment of frequency threshold is to shift a tail-end tool 2 vis-à-vis its head-end 20 neighbor after a minimum of eight uses between the two tools 2 when the relative proportion of usage favors the tail-end 21 tool 2 by a relative two-to-one: so, a six (tail 21) to two (head 20) relative tool 2 use would cause a shift, as would a 7-3, but a 5-3 margin is less than two-to-one, so would not cause a shift. Similar methods may be employed in tracking relative aggregate usage of tools 2 in a group 6 to similarly rearrange groups 6 of a toolbar 1 based upon usage frequency.

Exhibit A
Page 8 of 10

US 7,363,592 B1

**5**

In the preferred embodiment, tool 2 usage counters are not reset until necessary due to counter overflow. In alternate embodiments, tool 2 usage counters may be reset or otherwise adjusted after a shift.

Shifting tools 2 or groups 6 of toolbars 1 around automatically based upon usage frequency may seem spooky to users (due to its infrequency, a user may not remember setting such an option), so it is recommended that a confirmation prompt optionally appear each time a rearrangement is in the offing to inform and ask consent for the shift.

Optionally, some tools 2 or groups 6 may be exempt from rearrangement. For example, swapping the back 18 and forward 19 tools 2 might inherently be confusing, as the two have a culturally decided relational orientation as time vectors. Similarly, for example, groups 6 of toolbars 1 may have a certain logical order, such as correspondence to menu 12 order, whereby rearrangement may be undesirable. In the preferred embodiment, rearrangement exemption is a user option.

The invention claimed is:

1. A computer-implemented method comprising:
displaying a toolbar comprising a plurality of tool groups, wherein a tool group comprises at least one user-selectable tool,
wherein visibly designating at least one said tool group by at least one user-manipulatable divider located near at least one end of said tool group,
wherein said tool group divider visibly differs from a user-manipulatable toolbar handle if a said toolbar handle is visible,
wherein a said visible toolbar handle facilitates user-directable movement of said toolbar,
wherein said tool group divider facilitates user-directable movement related to a tool group;
receiving user selection of a tool group divider;
interactively tracking user indication of movement related to at least one tool group via user-interactive movement related to said tool group divider;
ceasing said tracking based upon receiving user indication thereof;
altering said tool group condition related to said toolbar according to said tracking indication and said ceasing indication.

2. The method according to claim 1, further comprising:
receiving user selection of a toolbar handle;
interactively tracking user indication of movement of a toolbar via user-interactive movement related to said toolbar handle;
ceasing said toolbar tracking based upon receiving user indication;
receiving user indication for merging two toolbars;
merging two toolbars based upon user-indicated movement of said toolbar handle in proximity to another toolbar concurrently with receiving user indication for merging two toolbars.

3. The method to claim 1, wherein said altering said tool group condition comprises, at least in part, altering the length of at least one tool group.

4. The method according to claim 1, wherein said altering said tool group condition comprises, at least in part, hiding at least one tool.

5. The method according to claim 1, wherein said altering said tool group condition comprises, at least in part, altering the number of tools displayed in at least one tool group.

6. The method according to claim 1, wherein said altering said tool group condition comprises, at least in part, showing at least one tool previously hidden.

**6**

7. The method according to claim 1, wherein said altering said tool group condition comprises, at least in part, not changing the length, nor location, of said toolbar.

8. A computer-implemented method comprising:
displaying a toolbar comprising at least one first tool group,
wherein said first tool group comprises at least one user-selectable tool,
wherein visibly designating said first tool group by at least one user-manipulatable divider located near at least one end of said first tool group,
wherein said first tool group divider is visually distinct from a said tool and from any visible means for directly manipulating said toolbar in its entirety, and
wherein said tool group divider is user-manipulatable for altering the condition of said tool group;
selecting said first tool group;
interactively tracking user indication of movement related to said first tool group until receiving user indication to cease tracking; and
altering the condition of at least one tool group on said toolbar based upon said tracked user indications.

9. The method according to claim 8, wherein said altered condition comprises, at least in part, separating said first tool group from said toolbar.

10. The method according to claim 8, wherein said altered condition comprises, at least in part, altering the number of tools displayed in at least one tool group on said toolbar.

11. The method according to claim 8, further comprising:
receiving user selection of a input device key contemporaneous with selecting said first tool group; and
altering the condition of said first tool group based, at least in part, upon said tracked user indications and said user key selection.

12. The method according to claim 8, further comprising:
checking at least one rule set prior to said altering said tool group condition.

13. The method according to claim 12,
wherein at least one rule in said rule set pertains to exemptions to rearrangement of at least one tool.

14. The method according to claim 8, further comprising:
visibly indicating said altered condition when the number of tools displayed in a tool group changes resultant from said tracked user indications.

15. A computer-implemented method comprising:
displaying a first toolbar at a first location,
said first toolbar comprising at least a first tool group and a second tool group,
wherein each of said first and said second tool group comprises at least one user-selectable tool,
wherein visibly designating at least one said tool group by at least one user-manipulatable divider located near at least one end of said tool group,
wherein said tool group divider is visually distinct from a said tool and from any visible means for directly manipulating said toolbar in its entirety, and
wherein said tool group divider is user-manipulatable for altering the condition of said tool group;
selecting said first tool group; and

US 7,363,592 B1

7

8

visibly separating said first tool group from said second tool group such that said first tool group becomes visually separated from said first toolbar at its first location.

**16**. The method according to claim **15**, such that said first tool group separation creates a second toolbar.

**17**. The method according to claim **16**, such that said first tool group separation results in said first tool group joining a pre-existing second toolbar.

**18**. The method according to claim **17**, further comprising:

rearranging at least one tool pre-existing on said second toolbar contemporaneous with joining said first tool group to said second toolbar.

**19**. The method according to claim **16**, further comprising:

visually indicating a connectivity between said first group and said first toolbar after said visual separation.

\* \* \* \* \*